CITY OF SPRINGFIELD *vs.* SPRINGFIELD STREET RAILWAY COMPANY.

Hampden. December 7, 1950. — February 8, 1951.

Present: QUA, C.J., RONAN, WILKINS, WILLIAMS, & COUNIHAN, JJ.

*Carrier*, Motor bus. *License. Public Utilities. Way*, Public: motor bus. *Equity Pleading and Practice*, Stipulation, Decree. *Springfield. Municipal Corporations*, By-laws and ordinances.

An agreement by the parties to a suit in equity at the argument before this court that the final decree appealed from included a certain phrase by error was ineffective.

The delegation by the city council of Springfield to the city's traffic and transportation board of the power to issue licenses to carriers under G. L. (Ter. Ed.) c. 159A, § 1, for the operation of motor buses upon its public ways is valid under St. 1913, c. 429, but § 12 of c. 11 of the Revised Ordinances of Springfield, 1945, authorizing the board at any time to change the route specified in a license or to transfer a licensee from one route to another, is invalid because repugnant to the statutory jurisdiction of the department of public utilities over the carrier once a license has been issued.

An order of the traffic and transportation board of the city of Spring-field to a carrier by motor bus to extend its existing route, and an order of the city council ratifying the action of the board, were not the equivalent of a license under G. L. (Ter. Ed.) c. 159A, § 1, to operate over the extension.

A city, whose licensing authority had issued and not revoked a license to operate motor buses over a certain route to a carrier, also the holder of a certificate of convenience and necessity issued by the department of public utilities, was not entitled to maintain a suit in equity against the carrier under G. L. (Ter. Ed.) c. 159A, § 15, to restrain operation over that route unless the carrier also operated over an extension thereof in accordance with an invalid order by the licensing authority purporting to require such extension.

BILL IN EQUITY, filed in the Superior Court on June 16, 1947.

On demurrer, the suit was heard by *O'Brien*, J.

*C. D. Sloan*, City Solicitor, for the plaintiff.

*T. J. Collins*, for the defendant.

WILKINS, J. The plaintiff appeals from an interlocutory decree sustaining a demurrer to its bill of complaint and from a final decree dismissing the bill. The final decree contains the phrase, "all parties interested — consenting hereto — in open court." The parties at the arguments before us agreed that the inclusion of this phrase was in error, and the defendant, with the plaintiff's assent, has since filed a motion in this court to expunge nunc pro tunc. The subject matter of the motion was not brought to the attention of the judge by whose order the final decree was entered. Indeed, it was too late to do so. *Burbank* v. *Farnham*, 220 Mass. 514, 516. *Eustace* v. *Dickey*, 240 Mass. 55, 87. Obviously, counsel cannot agree among themselves upon a revision of that decree. *Commonwealth* v. *Suffolk Trust Co.* 161 Mass. 550, 551. *Dorsey* v. *Corkery*, 227 Mass. 498, 500. *Goodwin* v. *Walton*, 298 Mass. 451, 452. *Smith* v. *Wheeler*, 326 Mass. 223, 224. See *Gordon* v. *Guernsey*, 316 Mass. 106, 107–108. We do not pause to decide whether the plaintiff's consent to the final decree effectively bars all right of appeal (see *Emery* v. *Seavey*, 144 Mass. 403; *Preston* v. *Henshaw*, 192 Mass. 34), because the plaintiff cannot prevail on the merits.

The bill, purportedly brought under G. L. (Ter. Ed.) c. 159A, § 15, alleges the following. The defendant operates motor vehicles upon the public ways of the city "for the carriage of passengers for hire, in such a manner as to afford a means of transportation similar to that afforded by a railway company, by indiscriminately receiving and discharging passengers" along certain routes. G. L. (Ter. Ed.) c. 159A, § 1. Pursuant to St. 1913, c. 429, the city council by ordinance delegated to the traffic and transportation board of the city the right to issue licenses for the operation of such motor vehicles. Allegedly, pursuant to G. L. (Ter. Ed.) c. 159A, § 1, the city council adopted an ordinance (Revised Ordinances of the City of Springfield, 1945, c. 11) which provides (§ 11) that a license shall specify the route over which a vehicle may be operated; that no vehicle shall on any trip be operated over less than the entire route; and (§ 12) that the traffic and transportation board may at any time change any route or transfer any licensee from one route to another. The board has issued a license to the defendant to operate motor vehicles over certain streets, "known as the Maple St. bus line." On December 13, 1946, the board voted that the defendant "shall extend the present Maple Street bus line through the East Alvord and West Alvord Street loop, giving at least one-half hourly service between the hours of 9 A.M. and 3 P.M. Without disturbing the service of the present Orange Street line extension through Plumtree Road to Pennsylvania Avenue," and shall "present a schedule of operation" at the next meeting of the board. On February 10, 1947, the city council passed, and the mayor approved, an order ratifying the vote of the board. The defendant has refused to obey the vote and the order. There are prayers (1) for a permanent injunction restraining the defendant from operating its motor vehicles on the Maple Street bus line without operating them through "the East Alvord and West Alvord Street loop" in accordance with the vote and the order; and (2) for a mandatory injunction ordering the defendant to operate its motor vehicles in accordance with the vote and the order.

There are five grounds of the demurrer, which, after setting up want of equity in the first three, reads: "4. The bill of complaint discloses that the city of Springfield through its traffic and transportation board is seeking to determine the adequacy of the service rendered by the respondent street railway company without setting out any authority by general law or special act of the General Court or any provision of the city charter of the city of Springfield which confers upon the city of Springfield or the traffic and transportation board (which exist and act under specific, limited powers delegated by the General Court) the power to require the respondent street railway company to operate a bus line over a prescribed route between two particular termini when the respondent itself neither seeks nor desires to operate any bus line over the proposed route between the given termini designated by the traffic and transportation board. 5. The bill of complaint discloses that the city of Springfield through its traffic and transportation board is seeking to preempt the State department of public utilities of its exclusive jurisdiction under G. L. (Ter. Ed.) c. 159, §§ 10, 12 (b), (c), and 16, and c. 159A, § 7 and § 10 as amended by St. 1945, c. 585, to determine the adequacy of the service rendered by the respondent street railway company by ordering the respondent to operate a bus line over a prescribed route between two particular termini for which route the respondent has not requested a license and which it does not seek or desire to operate, which order of the traffic and transportation board is beyond the authority of said board and an invasion of the statutory jurisdiction of the department of public utilities."

The delegation by the city council to the traffic and transportation board of the power to issue licenses was valid under a special act relating to the city of Springfield. St. 1913, c. 429. *Commonwealth* v. *Slocum*, 230 Mass. 180. But § 12 of c. 11 of the Revised Ordinances of the City of Springfield, 1945, which purports to give the board authority to change the routes specified in licenses and to transfer licensees from one route to another, is invalid because repugnant to certain

statutes hereinafter discussed.  While the city has important powers under G. L. (Ter. Ed.) c. 159A, including (§ 1) the initial right, with immaterial exceptions (§§ 3, 5), to approve or not to approve a license application (*Burgess* v. *Mayor & Aldermen of Brockton*, 235 Mass. 95, 102), a license once approved by it is subject to the paramount authority of the department of public utilities, which has "general supervision and regulation of, and jurisdiction and control over such common carriers to the same extent as it has over railway companies," with an immaterial exception (§ 10).[1]  It is true that a "license shall specify the route or routes over which the motor vehicles used thereunder may be operated," and a "licensee shall not operate motor vehicles . . . otherwise than upon routes specified in the license or licenses issued to him" (§ 2).  But, on the other hand, "No person shall operate a motor vehicle under a license issued as aforesaid unless he has also obtained from the department a certificate declaring that public convenience and necessity require such operation. . . .  Such certificate shall specify the route or routes over which the motor vehicles . . . may operate, and may prescribe the period during which the rights granted therein or in such license may be exercised, and may attach to the exercise of said rights such terms and conditions as the department shall deem that public convenience and necessity may require. [*Barrows* v. *Farnum's Stage Lines, Inc.* 254 Mass. 240, 244.  *Commonwealth* v. *Boston & Maine Transportation Co.* 282 Mass. 345, 348.] The department, after notice and hearing, may revoke any such certificate for cause, and may, in like manner, revise any provisions thereof and any of the terms and conditions of such certificate or license.  Upon such revocation, or upon the termination of the period covered by said certificate, the right of any person to operate thereunder shall immediately terminate " (§ 7).  *Roberto* v. *Department of Public Utilities*, 262 Mass. 583.  In limited contrast, the city, as licensing

[1] For the early history of this legislation see *Eastern Massachusetts Street Railway* v. *Trustees of the Eastern Massachusetts Street Railway*, 254 Mass. 28, 30–31.

authority, may revoke a license granted by it only "for good and sufficient reasons to be stated in the order of revocation," and unless within thirty days "the licensee consents thereto in writing, such order shall not be valid until approved by the department after public notice and hearing" (§ 4).

The city quotes in its bill as the authority for the passage of the ordinance (c. 11, §§ 11, 12) a sentence in c. 159A, § 1, which reads, "Any person, receiving a license under this section and operating a vehicle or vehicles thereunder, shall, in respect to such operation, be subject to such orders, rules or regulations as shall be adopted by the licensing authority[1] under this chapter." This, however, is not to be read as a detached abstraction, but rather as a component part of a comprehensive statute enacted to eliminate, and not to create, confusion in the regulation of this type of common carrier. The legislative antecedents of c. 159A show that the rules referred to in § 1 are the same rules described at greater length in § 12. St. 1919, c. 371, §§ 1–3. G. L. c. 159, §§ 45–47. St. 1931, c. 408. "The licensing authority in any city or town may, in respect of matters not treated of in the provisions of law governing the operation of motor vehicles under this chapter or rules established by the department, adopt rules and regulations governing such operation" (§ 12). But this is subject to the provision that the department may alter, amend, or revoke the rules and regulations adopted locally, and may adopt others in substitution which shall not be subject to amendment or repeal by a city, town, or its licensing authority (§ 12).

The city's case is riddled with fatal defects. Not only has it no statutory authority to order the extension of routes,[2] but it has not been empowered to require a carrier to apply to the department for a certificate of convenience and necessity over a new route, much less over a route for

---

[1] The licensing authority is defined in § 1 as the city council, and by virtue of St. 1913, c. 429, means the traffic and transportation board.

[2] As to the power of the department in this respect, see G. L. (Ter. Ed.) c. 159A, § 10; c. 159, §§ 16, 24. Compare G. L. (Ter. Ed.) c. 159, § 12 (b).

which no license has first been issued under G. L. (Ter. Ed.) c. 159A, § 1. The vote of the board and the order of the city council were not the equivalent of a license. Lacking any allegation to the contrary, it must be assumed that the operation of the Maple Street bus line was lawful, that is, under license and certificate of convenience and necessity duly issued. Consequently, the city could not proceed in equity to restrain its operation. The board had not voted to revoke the license. And, in any event, procedure before the department or by written consent of the licensee under G. L. (Ter. Ed.) c. 159A, § 4, is exclusive. For a similar reason, the city could not proceed in equity to extend the route. G. L. (Ter. Ed.) c. 159A, § 10, as amended by St. 1945, c. 585. G. L. (Ter. Ed.) c. 159, §§ 12 (c), 16, 24.

It follows that the demurrer was rightly sustained. Its five grounds were all good.

*Interlocutory decree affirmed.*
*Final decree affirmed with costs.*