COMMONWEALTH *vs.* CHARLES BRAGG.

Norfolk.   October 2, 1951. — January 31, 1952.

Present: QUA, C.J., WILKINS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Shellfish. Metropolitan District Commission. Municipal Corporations,*
   Shellfish. *Practice, Criminal,* Case stated; Requests, rulings and
   instructions.

The proper authorities of a municipality have the power under G. L.
   (Ter. Ed.) c. 130, § 52, as appearing in St. 1941, c. 598, § 1, to regulate
   the taking of shellfish in a reservation of the metropolitan district com-
   mission located within the boundaries of the municipality.
Requests for rulings have no standing in a criminal case heard on a
   statement of agreed facts.

COMPLAINT, received and sworn to in the District Court
of East Norfolk on November 30, 1950.

Upon appeal to the Superior Court, the case was heard by
*Gilmore,* J., a District Court judge sitting under statutory
authority.

In this court the case was submitted on briefs.

*E. R. Dewing,* District Attorney, & *S. Burr,* Assistant
District Attorney, for the Commonwealth.

*P. S. Rich,* for the defendant.

SPALDING, J.   The complaint charges that on Novem-
ber 30, 1950, the defendant "did take shellfish, to wit:
clams, from the shores, flats or waters within the city of
Quincy without first obtaining a permit therefor from the
board of license commissioners of the city" in violation
of a city ordinance.   In the Superior Court the case was
submitted to a judge on a statement of agreed facts, and
the defendant was sentenced to pay a fine of $5.   Being of
opinion that there is involved a question of law so impor-
tant or doubtful as to require the decision of this court, the
judge, with the consent of the defendant, reported the case,
and stayed proceedings.   G. L. (Ter. Ed.) c. 278, § 30.

The defendant dug clams on the day alleged in the complaint from a bed which is both within the Quincy Shore Reservation of the metropolitan district commission, hereinafter called metropolitan, and within the geographical limits of the city of Quincy. At the time of the alleged offence the defendant had a permit from metropolitan to dig clams in that bed. He also had a certificate from the division of marine fisheries of the department of conservation to the effect that clams in that bed were uncontaminated. Acting under G. L. (Ter. Ed.) c. 130, § 52, as appearing in St. 1941, c. 598, § 1, the city council of Quincy on May 19, 1949, passed an ordinance which reads: "No person shall take shellfish from the shores, flats or waters within the City of Quincy without first obtaining a permit therefor from the Board of License Commissioners of the City of Quincy." [1] At the time the defendant took the clams from the area here involved he had no permit to do so from the board of license commissioners of the city.

The question for decision, as the parties agree, is whether the city has a right to forbid a person to take shellfish from this area unless he has such a permit. Stated more broadly, the issue is whether a city or town can regulate the taking of shellfish in an area under the control of metropolitan.

From early times the right to fish on coastal waters (including the taking of shellfish) has been regarded in this Commonwealth as a public and common right to be enjoyed by all the inhabitants, subject to legislative regulation. _Weston_ v. _Sampson_, 8 Cush. 347. _Lakeman_ v. _Burnham_, 7 Gray, 437. _Proctor_ v. _Wells_, 103 Mass. 216. With respect to the taking of shellfish the traditional course of legislation has been to vest the cities and towns bordering on the sea with authority to regulate the subject. The genesis of such legislation is St. 1795, c. 71, section 2 of which prohibited the taking of shellfish from beds located in certain designated towns provided that "the major part of the

---

[1] It appears that all the requirements prescribed by § 52 with respect to the enacting of such an ordinance were satisfied, and no contention to the contrary has been made.

selectmen . . . of each of the said towns, shall at all times
have power to give permits, in writing, to any person to
take such . . . shell-fish from their beds in their said
towns, at such times, in such quantities, and for such uses,
as they shall deem reasonable, and express in their permit";
and provided also that "every inhabitant of each of the
said towns, without such permit, shall have a right to take
such . . . shell-fish from their beds therein for the use of
his or her family." Subsequent legislation enlarged the num-
ber of towns to which this authority was granted. Rev. Sts.
c. 55, § 13; Gen. Sts. c. 83, § 13.

The same legislative pattern reappears in St. 1880, c. 200,
which undertook to regulate the taking of clams and other
shellfish more specifically. Section 1 authorized the local
authorities to "control and regulate the taking of . . .
clams, quahaugs and scallops within their . . . towns and
cities . . . ; and . . . [to] grant permits prescribing the
times and methods of taking . . . the shell fish above named
. . . and . . . make such other regulations in regard to said
fisheries as they may deem wise and expedient." The in-
habitants of any city or town were given the right to "take
from the waters of their own or other cities and towns . . .
the shell fish above named for their own family use . . . but
subject nevertheless to the general rules prescribed . . . as
to the times and methods of taking said fish." Somewhat
similar provisions have been carried over into Pub. Sts.
c. 91, § 68, R. L. c. 91, § 85, and G. L. c. 130, § 84.

In passing the ordinance under consideration here the city
council of Quincy purported to act under St. 1941, c. 598,
§ 1, which repealed G. L. c. 130 and inserted in place thereof
a new chapter. Section 52 continues the traditional policy
of entrusting to municipalities the power to control and
regulate the taking of shellfish, and provides in part, "The
selectmen of a town bordering upon coastal waters . . .
and the . . . city council of any city so situated may con-
trol, regulate or prohibit the taking of . . . all kinds of
shellfish . . . within such cities and towns and may . . .
make any regulations . . . in regard to said fisheries as

they deem expedient, including the times, places, methods, purposes, uses, sizes, quantities and any other particulars of such taking, and may grant permits . . . . Every city or town which exercises the authority over such coastal fisheries . . . shall set aside . . . areas . . . in which the commercial taking of shellfish shall be prohibited and from which shellfish may be taken, for his own family use, by any inhabitant of the commonwealth holding a permit therefor from such city or town."

The ordinance here involved was within the scope of the enabling statute just mentioned and was valid. *Commonwealth* v. *Hilton,* 174 Mass. 29. *Commonwealth* v. *Howes,* 270 Mass. 69. It is applicable here unless the city has been divested of its power to control, regulate, or prohibit the taking of shellfish in areas under the care and control of metropolitan.

The defendant contends that metropolitan has exclusive authority over this subject in areas controlled by it under G. L. (Ter. Ed.) c. 92, notwithstanding that the bed is within the geographical limits of the city. The defendant relies especially on § 33 which empowers metropolitan to "acquire, maintain and make available . . . open spaces for exercise and recreation" and to "preserve and care for such public reservations." That section further provides, "The commission may, for the purpose of making the rivers and ponds within said district more available as open spaces for recreation and exercise, regulate the use of certain spaces along or near said rivers and ponds, and care for and maintain spaces so regulated." Our attention is also directed to § 37 whereby metropolitan is authorized to "make rules and regulations for the government and use of the reservations . . . under its care and to govern the public use of . . . ponds and other waters along which it holds abutting lands for reservations . . . ."

Admittedly these provisions clothe metropolitan with broad powers with respect to regulating the use of property under its care. See *Gleason* v. *Metropolitan District Commission,* 270 Mass. 377, 379. But the scope of such regula-

tions, as the defendant concedes, is necessarily limited to what is necessary and proper to effectuate the dominant purpose of providing "open spaces for exercise and recreation." The defendant argues that the digging of clams is a form of recreation and exercise. That it involves exercise cannot be denied; and there may be some who dig clams for recreation. But these are not the chief purposes for which they are dug. Primarily clams are dug because of their value and use as an article of food. It is apparent from the legislative history outlined above that the Legislature has always regarded shellfish as a valuable economic resource, in the protection of which the cities and towns bordering on the coast have a peculiar interest. It is highly improbable, we think, that the Legislature intended that the elaborate statutory scheme relating to shellfish, which in substantially its present form had been in existence for approximately a century when the statute creating the metropolitan park commission, the predecessor of metropolitan, was enacted, was to be superseded by legislation, the principal purpose of which was to provide exercise and recreation. And not without significance is the fact that in the comprehensive provisions relating to shellfish contained in St. 1941, c. 598 (G. L. [Ter. Ed.] c. 130, §§ 52–83), there are no exceptions concerning the powers of municipalities over the subject with respect to property under the control of metropolitan. We hold, therefore, that the city has not been divested of its right of control over the taking of shellfish in the area in question.

We are not concerned here with the question whether metropolitan might have concurrent authority to place restrictions on the digging of clams within areas under its control. Perhaps, as the Commonwealth suggests, digging could be restricted by metropolitan during certain seasons to prevent interference with the use of its property for recreational purposes. See Teasdale v. Newell & Snowling Construction Co. 192 Mass. 440. That question, however, is not before us and we do not pass on it.

Since the case was submitted on a statement of agreed

facts we have not dealt with the defendant's requests for rulings. *Quincy* v. *Brooks-Skinner, Inc.* 325 Mass. 406, 410–411. The finding of guilty is to stand.

*So ordered.*