GALON L. BARLOW, JR., & another[1] *vs.* TOWN OF WAREHAM
& another.[2]

Suffolk.   October 7, 1987. — January 6, 1988.

Present: HENNESSEY, C.J., ABRAMS, NOLAN, & O'CONNOR, JJ.

*Shellfish. Fisheries. Statute,* Construction, Repeal. *Municipal Corpora-
tions,* Regulations, By-laws and ordinances. *Constitutional Law,* Equal
protection of laws.

A Massachusetts town bordering upon coastal waters has the power under
    G. L. c. 130, § 52, by regulation of the selectmen authorized by vote
    of the town meeting, to restrict the commercial harvesting of shellfish
    to residents or taxpayers of the town unless that exclusion would violate
    the State or Federal Constitution and, furthermore, despite the existence
    of G. L. c. 130, § 80, providing that a person shall not take shellfish
    for commercial purposes unless he is the holder of a State-issued com-
    mercial fisherman permit, the State's grant of a § 80 permit has no
    preemptive effect on town action to bar nonresident shellfishermen.
    [410-414]
A town's restriction of commercial harvesting of shellfish, by regulation
    of the selectmen authorized by vote of the town meeting, to residents
    or taxpayers of the town was not prohibited by the Massachusetts Con-
    stitution in the absence of a showing that such a restriction bears no
    reasonable relation to conservation or any other permissible legislative
    objective. [414-417]

QUESTIONS OF LAW certified to the Supreme Judicial Court
by the United States District Court for the District of Massachu-
setts.

*Daniel M. Blackmon* for the plaintiffs.
*Joyce Frank (Karen V. Kelly* with her) for town of Wareham.
*Douglas H. Wilkins,* Assistant Attorney General, for Direc-
tor of the Division of Marine Fisheries, intervener.

[1] Diane R. Flynn Medeiros.

[2] Director of the Division of Marine Fisheries, intervener.

O'CONNOR, J. The United States District Court for the District of Massachusetts has certified two questions to this court pursuant to S.J.C. Rule 1:03, as appearing in 382 Mass. 700 (1981): "1. Do the statutes of Massachusetts, particularly G. L. c. 130, § 52, authorize a Massachusetts town having jurisdiction over coastal waters to restrict the commercial harvesting of the shellfish to residents or taxpayers of such town, by regulation of the selectmen authorized by vote of the town meeting?

"2. Is such a restriction prohibited by the Constitution of the Commonwealth of Massachusetts?" We answer the first question, "Yes, to the extent constitutionally permissible." We answer the second question, "No, not in the absence of a showing that such a restriction bears no reasonable relation to conservation or any other permissible legislative objective."

The following facts are uncontroverted. The plaintiffs are residents of the town of Bourne and are holders of State commercial fisherman permits issued by the director of the division of marine fisheries. These permits are duly endorsed to permit the taking of shellfish for commercial purposes, pursuant to G. L. c. 130, § 80 (1986 ed.). From 1937 to the present, the town of Wareham has issued town commercial shellfish licenses only to Wareham residents and taxpayers, pursuant to a 1937 town meeting vote, which so limits the issuance of permits "for the taking of clams, quahogs and scallops for market." That meeting vote also authorized the selectmen "to make such rules and regulations not inconsistent with law pertaining to the taking of scallops, clams, and quahogs as they in their judgment may, from time to time, decide to be for the best interests of the industry." The 1937 town meeting vote was reaffirmed in substance in town meeting votes in 1942, 1946, and 1953.

In October, 1982, Wareham enforcement officers required the plaintiffs to surrender previously issued town commercial shellfishing licenses because they were not bona fide residents of Wareham. On October 25, 1982, the selectmen of Wareham passed a regulation that forbade the taking of shellfish from town waters for any purpose without a town permit. Also, the

regulation denied commercial permits to noncitizens of Wareham. On October 26, the plaintiffs' requests for a commercial shellfishing permit from the town were denied because they were not Wareham residents.

The plaintiffs then brought an action in the Federal District Court claiming that the regulation was beyond that town's statutory authority and in violation of the plaintiffs' State and Federal constitutional rights. The director of the division of marine fisheries intervened in support of the town.

General Laws c. 130, § 52, first par., as appearing in St. 1941, c. 598, § 1, provides: "The selectmen of a town bordering upon coastal waters, if so authorized by their town . . . may control, regulate or prohibit the taking of . . . shellfish . . . within such . . . towns and may . . . make any regulations not contrary to law . . . as they deem expedient, including the times, places, methods, purposes, uses, sizes, quantities and any other particulars of such taking, and may grant permits . . . subject to any such regulation . . . ." Read literally, this broad language empowers authorized selectmen to refuse to grant commercial shellfishing permits to nonresidents unless that exclusion would violate the State or Federal Constitution or a statute. We are unaware of any sound reason to read the statute otherwise.

Such a reading receives support from this court's construction in 1899 of a predecessor statute. In *Commonwealth* v. *Hilton*, 174 Mass. 29 (1899), we construed Pub. Sts. c. 91, § 68 (1882), as amended by St. 1889, c. 391. That statute provided in relevant part that selectmen, if authorized by their town, could "control and regulate or prohibit the taking of eels, clams, quahuags, and scallops . . . and may grant permits prescribing the times and methods of taking . . . the shell-fish above named . . . and make such other regulations . . . as they may deem expedient." We held that that language, which is identical to § 52, first par., in all material respects, was "broad enough to authorize a regulation which prefers inhabitants of the town in issuing permits to take fish for sale." *Id.* at 32.

Not only is it significant that we have already effectively construed § 52, first par., but it is also significant that the Legislature reenacted the provisions construed in *Common-*

*wealth* v. *Hilton, supra,* in substantially the same form. See R.L. c. 91, § 85 (1902); G. L. c. 130, § 84 (1921 ed.); G. L. c. 130, § 84 (Ter. Ed.); St. 1941, c. 598, § 1. It is a "familiar rule of construction that 'when the same legislature, in a later statute, use the terms of an earlier one which has received a judicial construction, that construction is to be given to the later statute.'" *Luacaw* v. *Fire Comm'r of Boston,* 350 Mass. 326, 329 (1966), quoting *Commonwealth* v. *Hartnett,* 3 Gray 450, 451 (1855).

Our construction of § 52, first par., is consistent with § 52's over-all grant to municipalities of control over shellfishing. See *Commonwealth* v. *Bragg,* 328 Mass. 327, 329 (1952) ("[s]ection 52 continues the traditional policy of entrusting to municipalities the power to control and regulate the taking of shellfish"). See also the title to §§ 52-56: "Local control of shellfisheries"; *Baldiga* v. *Board of Appeals of Uxbridge,* 395 Mass. 829, 835 (1985) ("the title of an act is often helpful in interpreting the body of a statute"). The Legislature has consistently recognized that local municipalities "have a peculiar interest" in protecting the shellfish resource. *Commonwealth* v. *Bragg, supra* at 331.

General Laws c. 130, § 80, first par. (1986 ed. & 1987 Supp.), is a State licensing statute that provides, in relevant part, that "a person shall not dig or take shellfish . . . for commercial purposes unless he is the holder of a commercial fisherman permit (shellfish) or unless he is the holder of a commercial fisherman permit which has been specially endorsed . . . for the taking of such shellfish."[3] The last paragraph states that "[t]he director shall promulgate rules and regulations relative to the form, contents and use of all permits issued under this chapter." *Id.* The plaintiffs argue that § 80 preempts all local licensing of commercial shellfishing. Alternatively, they argue that, even if all local licensing of commercial shellfishing is not preempted, at least local licensing that entirely excludes State permit holders from town waters is preempted, since such exclusion would render a § 80 permit worthless.

---

[3] Section 80 was rewritten by St. 1970, c. 861, § 5, and the first paragraph was further amended by St. 1971, c. 442, § 2.

The issue of the possible preemptive effect of § 80 on a local regulation such as the one involved here was recognized, but not decided, in *Commonwealth* v. *Paasche,* 391 Mass. 18, 21 (1984). We now hold that the grant of a § 80 permit has no such preemptive effect.

It is clear from G. L. c. 130, § 55 (1986 ed.), that the grant of a § 80 permit does not preempt all local licensing of commercial shellfishing. Section 55 prohibits a town from granting certain aliens a commercial shellfishing permit. Interpreting § 80 as preempting all local licensing of commercial shellfishing would render § 55 surplusage, a result not likely to reflect the Legislature's intent.

We think it is also clear that local exclusion of nonresidents is not preempted by § 80. Section 80 can only be given preemptive effect by our concluding that it repealed by implication so much of the previously enacted § 52, first par., as authorizes such exclusion. See *Commonwealth* v. *Hilton, supra* at 32. "Such repeals have never been favored by our law. Unless the prior statute is so repugnant to and inconsistent with the later enactment that both cannot stand, then the former is not deemed to have been repealed." *North Shore Vocational Regional School Dist.* v. *Salem,* 393 Mass. 354, 358 (1984), quoting *Commonwealth* v. *Hayes,* 372 Mass. 505, 511 (1977).

In addition, our observation in *Bloom* v. *Worcester,* 363 Mass. 136, 155 (1973), made in the context of preemption of local action under the Home Rule Amendment, art. 89 of the Amendments to the Massachusetts Constitution, is equally applicable here: "The legislative intent to preclude local action must be clear." "If the State legislative purpose can be achieved in the face of a local ordinance or by-law on the same subject, the local ordinance or by-law is not inconsistent with the State legislation, unless the Legislature has expressly forbidden the adoption of local ordinances and by-laws on that subject." *Id.* at 156. See *Wendell* v. *Attorney Gen.,* 394 Mass. 518, 523-525 (1985).

The plaintiffs' argument for § 80 preemption rests on the incorrect premise that a § 80 permit necessarily implies affirmative authorization to shellfish commercially anywhere in

State coastal waters. The statutory language and history, however, indicate that a State permit is intended as a necessary, but not necessarily sufficient, condition for commercial shellfishing. It is not true, as the plaintiffs argue, that the State's issuance of a commercial shellfishing permit under § 80 is worthless if municipalities can exclude nonresidents. A resident licensed by the town cannot commercially shellfish without a State permit.

The legislative objective in enacting § 80 is most clearly demonstrated in St. 1941, c. 598, § 1. There, the second paragraph of § 80 forbade the taking of shellfish for commercial use without a certificate stating that the coastal waters and flats, as well as the shellfish themselves, were free from contamination. The sixth paragraph of § 80 instructed the director to "promulgate rules and regulations relative to the form, contents and use of all certificates issued under this section . . . and such other rules and regulations . . . *as will most effectively safeguard the public health and meet the requirements of the United States* [and of other States] *as to the interstate commerce in fish or shellfish*" (emphasis added). Those provisions demonstrate that the § 80 permitting process is primarily intended to safeguard public health and ensure the acceptability of Massachusetts fish and shellfish in interstate commerce. See Report of the Special Commission Established to Consider All Questions Relating to the Taking, Marketing, Shipping, Transportation and Propagation of Shellfish, 1929 House Doc. No. 1025, which recommended the licensing for public health purposes of all who sell shellfish. *Id.* at 27. The same report advised that it would not be wise to interfere with the local control exercised over the shellfishing industry. *Id.* at 10.

We see nothing in the 1970 revision of the Act or in any other amendment to § 80 that indicates a legislative intent to preempt, rather than complement, local licensing. To the contrary, the statute is phrased in the negative: "[A] person shall not dig or take shellfish . . . for commercial purposes unless he is the holder of a commercial fisherman permit (shellfish)." The fact that one cannot commercially shellfish without a State permit does not establish that its holder is entitled to shellfish

without any other permits required by localities pursuant to
§ 52.

In sum, there is no conflict between a § 80 permit and town
action to bar nonresident shellfishermen.[4] Therefore, a ban on
nonresident shellfishermen is "not contrary to law" under § 52
because of § 80. See *Commonwealth* v. *Bragg,* 328 Mass.
327, 331 (1952) (§ 52 local control over shellfishing not
preempted by fact that Metropolitan District Commission was
also given control over area); *Amherst* v. *Attorney Gen.,* 398
Mass. 793, 797-798 (1986) (municipality can prohibit use of
firearms despite Commonwealth's statute regarding regulation
of hunting, which includes guidelines concerning use of fire-
arms); *Milton* v. *Attorney Gen.,* 372 Mass. 694, 695-696 (1977)
(local by-law forbidding self-service gasoline stations not in-
consistent with State regulation whose purpose is to assure the
safety of such stations). Compare *County Comm'rs of Bristol*
v. *Conservation Comm'n of Dartmouth,* 380 Mass. 706 (1980)
(construction of new jail not subject to local zoning by-law
where such by-law could impede statutory task of jail construc-
tion), cited in *Commonwealth* v. *Paasche, supra* at 21.

Thus, we answer the first certified question, "Yes, to the
extent constitutionally permissible," and we turn to the second
certified question: "Is [a town's restriction of commercial har-
vesting of shellfish to residents or taxpayers of such town]
prohibited by the Constitution of the Commonwealth of Mas-
sachusetts?"

The plaintiffs' contention that they may not constitutionally
be excluded from commercial shellfishing in Wareham's coast-
al waters on the ground of their nonresidency essentially pre-
sents an equal protection argument.[5] Generally, our review of
an equal protection claim under the State Constitution is the
same as our review of a Federal equal protection claim. *Dick-
erson* v. *Attorney Gen.,* 396 Mass. 740, 743 (1986). *Zeller*

---

[4] It is relevant that our view is shared by the intervener. *Bloom* v. *Worces-
ter, supra* at 159-160.

[5] To the extent a due process claim is also presented, our standard of
review is the same as under equal protection principles. See note 6, *infra.*

v. *Cantu,* 395 Mass. 76, 83-84 (1985). *Commonwealth* v. *Franklin Fruit Co.,* 388 Mass. 228, 235 (1983). "In equal protection cases, a classification involving a suspect group or a fundamental right must be supported by a compelling State interest. Cases not involving a suspect group or fundamental right need be supported only by a rational or conceivable basis." *Lee* v. *Commissioner of Revenue,* 395 Mass. 527, 529-530 (1985). Therefore, we must determine whether a town's exclusion of nonresidents from commercial shellfishing involves a suspect class or a fundamental right. We conclude that it does not involve either.

While the right to engage in any lawful occupation is protected by the State Constitution, *Leigh* v. *Board of Registration in Nursing,* 395 Mass. 670, 682 (1985), *S.C.,* 399 Mass. 558 (1987), the "right to engage in a particular occupation is not a 'fundamental right infringement of which deserves strict judicial scrutiny.' " *Blue Hills Cemetery, Inc.* v. *Board of Registration in Embalming & Funeral Directing,* 379 Mass. 368, 371 n.6 (1979), quoting *Commonwealth* v. *Henry's Drywall Co.,* 366 Mass. 539, 542 (1974). Moreover, regulations disfavoring nonresidents do not involve a "suspect class" requiring heightened scrutiny. Thus, in *Commonwealth* v. *Petralia,* 372 Mass. 452 (1977), we evaluated a city parking regulation that excluded nonresidents from parking in a certain area under the rational basis test. See *Western & S. Life Ins. Co.* v. *State Bd. of Equalization,* 451 U.S. 648, 667 n.21 (1981) (equal protection analysis requires no more than rational basis for discrimination by States against out-of-State interests); *Baldwin* v. *Fish & Game Comm'n,* 436 U.S. 371, 388-391 (1978) (Court evaluated Federal equal protection challenge to higher licensing fees for sport hunting assessed against out-of-State residents under lower level rational scrutiny); *County Bd. of Arlington County* v. *Richards,* 434 U.S. 5, 7 (1977) (Federal Constitution does not "presume distinctions" between residents and nonresidents of a neighborhood to be invidious).

Our task, then, is to determine whether a town's regulation restricting commercial harvesting of shellfish to residents or

taxpayers of such town bears a "reasonable relation to a permissible legislative objective." *Zeller* v. *Cantu, supra* at 84, quoting *Pinnick* v. *Cleary,* 360 Mass. 1, 14 (1971).[6] The regulation is presumptively constitutional. *Commonwealth* v. *Petralia, supra* at 456. The plaintiffs have the "burden of proving the absence of any conceivable grounds which would support the [town's regulation]." *Zeller, supra* at 84, quoting *Commonwealth* v. *Franklin Fruit Co., supra* at 235. Conservation of the shellfish resource unquestionably would be a permissible legislative objective. Furthermore, on the record presented the plaintiffs have failed to prove that there are no conceivable grounds for the town to conclude that exclusion of nonresidents from shellfishing would advance that interest.

According to Report of the Department of Natural Resources, 1963 Senate Doc. No. 635, "the fisherman as a rule continues to fish in any locality until fishing in that locality has become unprofitable. He then moves his operations to new waters until these in turn are exhausted . . . . Under these methods public beds are worked until all their natural recuperatory power is exhausted, and then it is thrust aside as worthless, a barren area." *Id.* at 19. That nonresident commercial fishermen, with no stake in the continued viability of the shellfish industry in a particular locality, would be more likely to deplete the beds in that locality than resident fishermen, would be a rational determination. It also would be reasonable to conclude that the exclusion of nonresidents would promote conservation by enabling a locality to expend funds for the protection and cultivation of shellfish pursuant to G. L. c. 130, § 54 (1986 ed.), without fear that overfishing by nonresidents would destroy the shellfisheries. Therefore, a town regulation restricting shellfishing to residents and taxpayers would seem to satisfy Massachusetts constitutional requirements. Nevertheless, in answering the second certified question, we think we should leave open the possibility, however remote it may be, that the

---

[6] While this statement was made in the context of a due process claim, the applicable standard under due process is the same as it is under equal protection. *Zeller* v. *Cantu, supra* at 84.

plaintiffs can demonstrate that the facts related to shellfishing and shellfishing beds are such that a residency restriction bears no reasonable relation to conservation or any other permissible legislative objective. See *State* v. *Norton,* 335 A.2d 607, 616-617 (Me. 1975). Our response to the second certified question, therefore, is that a town's restriction of commercial harvesting of shellfish to residents or taxpayers of such town is not prohibited by the Constitution of the Commonwealth in the absence of a showing, not present in the record before us, that such a restriction bears no reasonable relation to conservation or any other permissible legislative objective.