ROGER P. LOMBERTO vs. TOWN OF FRANKLIN.

No. 88-P-473.

Norfolk. February 17, 1989. — September 25, 1989.

Present: PERRETTA, KAPLAN, & KASS, JJ.

*Municipal Corporations,* By-laws and ordinances, Board of health. *Board of Health. Constitutional Law,* Home rule. *Carrier,* Solid waste removal.

A by-law adopted by a town, prohibiting the board of health from issuing certain solid waste removal permits under G. L. c. 111, § 31A, to anyone other than the person having a contract with the town for the curbside collection of solid waste, was not inconsistent with or repugnant to the provisions of G. L. c. 159B, and did not infringe the rights of a holder of a common carrier certificate under that statute [799-802]; further, the by-law constituted a lawful exercise of the municipality's power to determine what is beneficial to the public health [803].

CIVIL ACTION commenced in the Superior Court Department on December 10, 1987.

The case was heard by *Suzanne V. DelVecchio,* J., on motions for summary judgment.

*Frank J. Weiner* for the plaintiff.
*John W. Giorgio* for the defendant.

PERRETTA, J. Prior to 1988, the town of Franklin did not provide curbside rubbish collection as a municipal service for its inhabitants. Lomberto, the holder of a common carrier certificate and a rubbish removal permit, issued to him by the Massachusetts Department of Public Utilities (DPU) and the local board of health under G. L. c. 159B, § 3, and G. L. c. 111, § 31A, respectively, engaged in a trash removal business in Franklin. In 1987, the town enacted a by-law, art. 87-120, which allows only persons under contract with the town to collect rubbish from residential buildings containing fewer than three units. Lomberto brought this action seeking a declaration that the by-law is invalid because it interferes with his right as a

common carrier. On cross motions for summary judgment, the Superior Court judge concluded that the by-law was neither inconsistent with, nor repugnant to, State law and was, therefore, valid. We affirm.

1. *The Undisputed Facts*.

There are no facts in dispute, and we recite them as they appear in the materials considered· by the judge in ruling on the motions. Prior to the enactment and implementation of the by-law in dispute, curbside trash was collected by private haulers, such as Lomberto, who were paid for this service by their customers. The collected waste was transported to a transfer station maintained by the town and operated under contract with it by an individual.

Because of considerable increase in costs and other problems associated with solid waste disposal, the town appointed an advisory committee, the Quality Environmental Group, to formulate a solid waste management plan for the town. With an eye to meeting future needs at a predictable cost, the Group recommended that the town enter into an exclusive, long-term contract for the collection and disposal of solid waste.

To implement the plan, the town first entered into a twenty-year contract with Wheelabrator Millbury, Inc. (WMI), for the disposal of the town's residential waste at WMI's refuse-to-energy facility located in Millbury. In exchange for a low base tipping fee, the town agreed to deliver to WMI's facility a guaranteed annual tonnage of waste. If the guaranteed minimum tonnage is not met, the town will be liable for additional payments to WMI.

Next, the town adopted by-law art. 87-120, on December 2, 1987.[1] As can be seen from its terms, set out in full in the

---

[1] *"Article 87-120: Solid Waste Collection*

"1. No permit for the removal of solid waste from residential buildings containing less than three dwelling units shall be issued by the Board of Health of the Town of Franklin pursuant to G. L. c. 111, § 31A, except to the person or persons having a contract with the Town for the curbside collection of solid waste from such residential dwelling units located therein. Nothing contained in this By-Law shall prohibit the Board of Health from issuing temporary permits pursuant to G. L. c. 111, § 31A during any period of time when the curbside collection of solid waste is not being per-

margin, the by-law prohibits the board of health from issuing certain solid waste removal permits under G. L. c. 111, § 31A, to anyone other than the person having a contract with the town for the curbside collection of solid waste. Further, the by-law requires that the person awarded the contract deliver all the collected residential solid waste to the WMI facility in Millbury.

Lastly, the town selected through a bidding process a hauler to perform curbside solid waste collection from one- and two-family residences throughout the town. Lomberto did not submit a bid on the three-year contract but, instead, brought this action.

2. *Article 87-120 and G. L. c. 159B, § 3.*[2]

---

formed by any person pursuant to a contract with the Town. This By-Law shall also not prohibit the Board of Health from issuing permits pursuant to G. L. c. 111, § 31A for the removal of solid waste from any commercial buildings or residential buildings containing three or more dwelling units.

"2. Any person having a contract with the Town for the curbside collection of solid waste shall not commingle any residential waste collected or received from dwelling units or municipal buildings located in the Town pursuant to its contract with the Town, with commercial or industrial solid waste, or residential waste generated in another Municipality. In addition, such person shall deliver on behalf of the Town to the Wheelabrator Millbury, Inc. refuse to energy facility only solid waste collected or received from residential dwelling units and municipal buildings located within the Town pursuant to its contract with the Town.

"3. Any person who violates any provision of this By-Law may, in the discretion of the Town Official who is the enforcing person, be penalized by a non-criminal disposition as provided in General Laws Chapter 40, Section 21D. The fine for each such violation shall be two hundred dollars ($200.00). "Enforcing person" as used in this section shall mean the Director of the Department of Public Works and his designees, and any police officer in the Town of Franklin."

[2] As inserted by St. 1938, c. 483, § 1, that provision reads, in pertinent part:

"No person shall engage in the business of a common carrier by motor vehicle upon any way unless there is in effect with respect to such carrier a certificate issued by the department [of public utilities] authorizing the operations to be performed by such person.

(a) A certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operation covered by the application, if it is found that the applicant is fit, willing and able properly to perform the services proposed, and to conform to this chapter and the lawful requirements, orders, rules and regulations of

Lomberto was issued an irregular route common carrier[3] certificate by the DPU, under its authority conferred by G. L. c. 159B, § 3, for the "transportation of waste materials, scrap metals, sand, gravel, stone, asphalt road mix, fill, mulch, loam within a 25 mile radius of Town Hall, Franklin." He argues that no provision which restricts or limits this certificate can be enacted by any entity other than the DPU, as regulation of common carriers has been preempted by the Legislature through G. L. c. 159B.

The Supreme Judicial Court has stated: "Under § 6 of art. 89, the Home Rule Amendment, and § 13 of G. L. c. 43B, the Home Rule Procedures Act, communities may enact legislation to advance the common good so long as it is not inconsistent with State law. See *Bloom* v. *Worcester*, 363 Mass. 136, 145, 149 (1973). In *Bloom*, we resolved that in determining whether a local ordinance or by-law is 'not inconsistent' with any general law for purposes of the Home Rule provisions, we would follow 'the same process of ascertaining legislative intent . . . as has been performed in the Federal preemption cases and in our own cases involving "inconsistent" or "repugnant" local ordinances or by-laws.' *Id.* at 155. Under this approach, we emphasized, '[t]he legislative intent to preclude local action must be clear' (footnote omitted). *Id.*" *Marshfield Family Skateland, Inc.* v. *Marshfield*, 389 Mass. 436, 440-441 (1983).

Article 87-120 is neither inconsistent with nor repugnant to G. L. c. 159B, which seeks to promote competitive rates among carriers and to insure a safe highway system for the protection of the citizens of the Commonwealth in a manner that is amen-

---

the department thereunder, and that the proposed service to the extent authorized by the certificate is or will be required by the present or future public convenience and necessity; otherwise, such application shall be denied."

[3] An "irregular route common carrier" is a "person who transports by motor vehicle property, or any class or classes of property, for the general public, for compensation, over irregular routes, and whose operations are conducted to or from a given point within the commonwealth and are not based upon a predetermined schedule." G. L. c. 159B, § 2, as amended by St. 1941, c. 653, § 2.

able to meeting the needs of commerce.[4] The objective of art. 87-120 is protection of the public health, a concern which, as it pertains to the disposal of waste materials, the Legislature, through G. L. c. 111, §§ 31A and 31B, has expressly left to local government.[5] It is apparent from these provisions that

---

[4] The purposes of G. L. c. 159B are fully stated in § 1.

"It is hereby declared to be the policy of the commonwealth to regulate transportation of property by motor carriers upon its ways in such manner as to recognize and preserve the inherent advantages of such transportation, and to foster sound economic conditions in such transportation and among carriers engaged therein in the public interest; and in connection therewith to: (1) Promote adequate, economical and efficient service by motor carriers, and reasonable charges therefor, without unjust discriminations, undue preferences or advantages or unfair or destructive competitive practices, (2) improve the relations between, and coordinate transportation by and regulation of, motor carriers and other carriers, (3) develop and preserve a highway transportation system properly adapted to the needs of the commerce of the commonwealth, and (4) promote safety upon its ways in the interests of its citizens."

[5] As amended through St. 1986, c. 158, § 31A reads: '

"No person shall remove or transport garbage, offal or other offensive substances through the streets of any city or town without first obtaining a permit from the board of health of such city or town; provided, however, that no rules or regulations shall restrict the hours of the day when garbage, offal or other offensive substances may be collected in areas zoned for business, commercial or industrial use. An application for such permit shall be in such form and contain such information, on oath, as such board shall require. All such permits shall expire at the end of the calendar year in which they are issued, but may be renewed annually on application as herein provided. No permit shall be transferred except with the approval of the said board.

"Notwithstanding the foregoing provisions, any person may, without such a permit, transport garbage, offal or other offensive substances through the streets of a city or town in which said substances were not collected; provided, that he registers with the board of health of such city or town; and, provided further, that he transports said substances in accordance with such reasonable rules and regulations as may be established by such board of health. Motor vehicles owned by the commonwealth or any of its political subdivisions and motor vehicles engaged under contract with the commonwealth in the transportation of garbage or refuse shall be exempt from the provisions of this section; provided, however, that a city or town may recommend to the department of public works, in writing, an alternative route of travel for such motor vehicles whereby the noise or nuisance incident

Lomberto's common carrier certificate was never intended to constitute complete and total authorization to transport waste materials. See *Barlow* v. *Wareham*, 401 Mass. 408, 412-413 (1988). Rather, the certificate authorizes him to transport waste in Franklin subject to Franklin's permission. See *Malden* v. *Flynn*, 318 Mass. 276, 279 (1945).

If G. L. c. 159B has any preemptive effect, it would be in the regulation of common carriers for the purpose of achieving the statewide objective described in § 1 of that statute. As explained in *Bloom* v. *Worcester*, 363 Mass. at 156, "[t]he existence of legislation on a subject . . . is not necessarily a bar to the enactment of local ordinances and by-laws exercising powers or functions with respect to the same subject. If the State legislative purpose can be achieved in the face of a local ordinance or by-law on the same subject, the local ordinance or by-law is not inconsistent with the State legislation, unless the Legislature has expressly forbidden the adoption of local ordinances and by-laws on that subject." The statute and the by-law are not related in concern or substance. The certificate issued Lomberto under § 3 authorizes him to transport waste material in the Franklin area. Article 87-120 limits those from whom Lomberto may collect such materials. It does not prohibit him from doing that which his certificate allows. Compare *Springfield* v. *Springfield St. Ry.*, 327 Mass. 4 (1951). Notwithstanding any indirect consequences that art. 87-120 might have upon the holder of a common carrier certificate, such consequences are irrelevant to the attainment of those statewide goals embodied in G. L. c. 159B. The by-law is neither inconsistent with nor repugnant to that statute.

---

to such travel shall be minimized or abated and said department shall consider such alterations or changes in the travel routes of such motor vehicles as will result in the minimization of such noise or nuisance."

As inserted by St. 1937, c. 282, § 31B provides:

"Boards of health shall, from time to time, make rules and regulations for the control of the removal, transportation or disposal of garbage, offal or other offensive substances. Whoever violates any provision of section thirty-one A, or of any rule or regulation made thereunder, shall be punished by a fine of not more than fifty dollars."

3. *Article 87-120 and the Public Health.*

Lomberto argues that art. 87-120 was not prompted by true concern for public health and, therefore, is not "protected" by G. L. c. 111, §§ 31A and 31B. The by-law was adopted by the Franklin town council for reasons entirely consistent with §§ 31A and 31B. See *Marshfield Family Skateland, Inc.* v. *Marshfield,* 389 Mass. at 441-442. The claim that art. 87-120 does not protect the public health is no more than a difference of opinion between Lomberto and the town council.

4. *Conclusion.*

The judgment dismissing Lomberto's complaint does not declare the rights of the parties. See *Boston* v. *Massachusetts Bay Transp. Authy.,* 373 Mass. 819, 829 (1977). We order that the judgment be modified to declare that Franklin by-law, art. 87-120, is not an infringement upon Lomberto's common carrier certificate and constitutes a lawful exercise of power to determine what is beneficial to the public health of Franklin. As so modified, the judgment of the Superior Court is affirmed.

*So ordered.*